# Exhibit 1

## PERFORMANCE AGREEMENT

THIS PERFORMANCE AGREEMENT (the "Agreement") is made and entered into this October 18, 2025 (the "Execution Date"),

**BETWEEN:**

JKN Universe, LLC d/b/a
<u>The Miss Universe Organization</u>
**(the "Client")**

**-AND –**

Omar Harfouch

**(the "Performer")**

<u>BACKGROUND:</u>

A. **THE PERFORMER** is an internationally recognized pianist, composer, and artist who will serve as both **OFFICIAL JUDGE AND LIVE PERFORMER** for the **74th Miss Universe Finale Show** to be held in **Bangkok, Thailand.**
B. **THE CLIENT** wishes to engage the Performer to render his performance services and judging criteria in accordance with the terms and conditions set forth below.

**IN CONSIDERATION OF** the mutual covenants and promises contained herein, and for other valuable consideration, the sufficiency of which is acknowledged, the Parties agree as follows:

## ARTICLE I
## ENGAGEMENT

1. **Event: Miss Universe 74th Finale Show (**the **"Event").**
    **1.1 Date and Venue:** November 21, 2025, IMPACT ARENA, Exhibition and Convention Center, Muang Thong Thani, Nonthaburi, Thailand.
    **1.2 Role:** The Performer shall render **(i)** a **live piano performance during the top 12 Evening Gown Segment, and (ii)** serve as an **Official Judge of the Event.**
    **1.3 Coordination:** The Performer shall coordinate his performance and related activities with the Client's Production Team, in collaboration with **MGI Production** and any other designated third parties.

## ARTICLE II
## SCOPE OF PERFORMANCE

2.  **SCOPE OF PERFORMANCE:** Provide the client a live piano performance featuring original music composed and performed by the Performer.

> **2.1 Composition:** The Performer shall create and perform an original work inspired by his ***Concerto for Peace,*** specially adapted to reflect the values and theme of **Miss Universe 74.**

> **2.2 Delivery of Material:**

>> **2.2.1** The final master composition and high-quality audio files (441 kHz/24-bit stereo) shall be submitted to MUO's Production Team in Bangkok prior to the Event for integration into show rehearsals and media materials.

>> **2.2.2** The Performer grants **MUO** the right to use the music for **promotional teasers, social media, television, and digital campaigns** leading up to the show (these sources not being limitative).

>> **2.2.3** The Performance will include on-screen stage interactions with contestants and the presentation of a **"Message of Peace"** moment to be coordinated with MUO's Show Director, Technical Team, and others approved verbally or in writing by the Client.

>> **2.2.4** Rehearsals: The Performer agrees to attend all required rehearsals, including **technical, camera, and dress runs,** at times designated by MUO and MGI Production.

## ARTICLE III
## TECHNICAL RIDER AND PRODUCTION

3.  **Technical Requirements:** The Performer shall cover all technical and logistical costs related to his performance, including:

    (a) **Grand Piano (rental, delivery, tuning).**
    (b) **Monitors, microphones, DI boxes, IEMs, and cables.**
    (c) **Power lines and audio connections (FOH and monitor).**
    (d) **Freight, logistics, setup, and removal.**
    (e) **Any rehearsal rooms, recording rooms, or studios required for preparation.**

> **3.1 Playback Format:** All playback material shall be delivered in 44.1 kHz / 24-bit stereo format.

> **3.2 Soundcheck:** Soundcheck schedule and stage setup will be arranged by **MGI Production** in coordination with the MUO Technical Director.

**3.3 Compliance:** The Performer shall follow all stage directions, cue points, and production adjustments as instructed by the client's assigned Show Director and/or personnel.

## ARTICLE IV
## COSTS AND RESPONSIBILITIES

4. **The Performer Responsibilities:**

   4.1 The Performer shall be solely responsible for all personal and production-related costs, including but not limited to:

       **4.1.1** International airfare and baggage fees.

       **4.1.2** Hotels and accommodations.

       **4.1.3** Per Diem, meals, and beverages.

       **4.1.4** Freight, logistics, customs, insurance, and carnets (if required).

       **4.1.5** Hair, makeup, and wardrobe.

       **4.1.6** Co-Music Director, arranger, or musicians.

       **4.1.7** Rigging, installation, and removal.

       **4.1.8** Security support during rehearsals and live show.

       **4.1.9** Visa and immigration processing fees.

       **4.1.10** Any other associated or incidental costs related to the performance.

   4.2 The Client shall be responsible for:

       **4.2.1** Bangkok local ground transportation for the Performer throughout the Event Schedule, including transportation between the airport, hotel, rehearsal venues, and IMPACT arena.

## ARTICLE V
## COMPENSATION AND CONSIDERATION

5. **Honorary Nature of Engagement:** The Performer acknowledges and agrees that his participation is rendered **on an honorary and voluntary basis** in recognition of his artistic contribution and global advocacy for peace.

   5.1 **No Monetary Payment:** No monetary fee, salary, stipend, or reimbursement due from the Client to the Performer. The Parties acknowledge that the engagement serves a mutual purpose of public recognition and exposure through the Miss Universe platform.

   5.2 **Publicity Value:** The Client may credit and feature the Performer across its global broadcast and media channels, thereby providing mutual visibility and cultural promotion.

## ARTICLE VI
## RIGHTS, LICENSES, AND CLEARANCES

6. **Ownership of Composition:** The Performer retains full ownership of the underlying musical composition, including all publishing, master, and moral rights.

**6.1 License to MUO:** The Performer hereby grants to the client a **royalty-free, non-exclusive, worldwide, and perpetual license** to record, broadcast, stream, reproduce, and publicly perform the Performance and to use excerpts thereof for promotional, archival, and editorial purposes in connection with the Miss Universe 74 Event and related media.

**6.2 Ownership of Recordings:** All video and audio recordings of the event created by or for the Client shall be owned by the Client. The Client's ownership applies only to the recorded audiovisual material, **not the underlying composition.**

**6.3 Clearances:** The Performer warrants that the musical composition is his original work and that all rights necessary for MUO's use have been cleared.

## ARTICLE VII
## JUDGING DISCLAIMER AND IMPARTIALITY

7.  **Compliance with MUO Rulings:** The Performer acknowledges that his participation as a Judge is subject to the Client's official rules, scoring procedures, and final rulings, whether given verbally or in writing. He agrees to follow all judging criteria, instructions, and determinations as directed by MUO's authorized representatives.

**7.1 Independence and Impartiality:** The Performer represents and warrants that he has no personal, professional, or financial relationship with any of the contestants, participants, or performers of the Event, and that his evaluations shall be made fairly, objectively, and without bias.

**7.2 Disclaimer of Conflicts:** The Performer expressly disclaims any potential conflict of interest and agrees to promptly notify the Client should any such relationship or appearance of bias arise prior to or during the Event.

**7.3 Finality of Results:** The Performer acknowledges that MUO retains the sole and final authority to determine judging results and outcomes and agrees that such decisions shall be final and binding.

8.  **Non-Disclosure and Confidentiality:** The Performer acknowledges that during this engagement, he may receive or have access to confidential information concerning the Event, contestants, scoring process, production, broadcast plans, or other proprietary matters, not being limitative ("Confidential Information")

**8.1 Obligation of Non-Disclosure:** The Performer agrees not to disclose, reproduce, distribute, or otherwise communicate any confidential information to any third party, including media outlets, social platforms, or personal contracts, without the Client's prior written consent.

**8.2 Duration:** This confidentiality obligation shall survive the expiration or termination of this Agreement and remain in effect indefinitely, until such information becomes public through no fault of the Performer. Any unauthorized disclosure or breach of confidentiality may cause irreparable

harm to the Client. The Client shall be entitled to seek injunctive relief, in addition to any other remedies available at law or equity.

## ARTICLE IX
## DELIVERABLES AND CREATIVE CONTROL

9.  **Deliverables and Creative Control:** Final audio materials and composition files to be submitted to MUO Production Team prior to the **Client retains final creative control over editing, timing, and integration within the telecast.**

## ARTICLE X
## FORCE MAJEURE AND INDEMNIFICATION

10. **FORCE MAJEURE AND INDEMNIFICATION:** Due to the gratuitous nature of the Agreement. Neither Party shall be liable for delay or non-performance caused by events beyond reasonable control, including acts of God, war, pandemics, or government restrictions. Thus, Each Party shall be responsible for its own acts and omissions and shall indemnify the other for claims arising from its own negligence or breach of this Agreement.

## ARTICLE XI
## GOVERNING LAW AND JURISDICTION

11. This Agreement shall be governed by the laws of the State of New York, United States of America, and the parties submit to the exclusive jurisdiction of its courts.

## ARTICLE XII
## MISCELLANEOUS

12. **Miscellaneous:** Both Parties agree:

   12.1  That the entire agreement supersedes all prior understandings both orally and in writing.

   12.2  No amendment shall be valid unless in writing and signed by both Parties.

   12.3  That Electronic and counterpart signatures are binding once both are placed in the same document.

   12.4  **Good Faith:** Both Parties agree to perform their obligations in Good Faith and with mutual respect to ensure the success of the Event.

**NOW THEREFORE,** in reliance upon the representations, warranties, and mutual covenants contained herein and intending to be legally bound hereby, the Parties affirm that we have read and understood all provisions of this Agreement, and have had the opportunity to seek independent advice regarding its terms, and that we enter into this Agreement voluntarily, without coercion or misrepresentation, with the intention to be fully bound by its conditions.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the effective date.

[*Signatures Placed in the Following Page*]

| For: | For: |
|---|---|
| **JKN UNIVERSE LLC:** | **OMAR HARFOUCH** |
| **By:** | **By:** |
| **Name:** Jose A Castillo | **Name: Omar Harfouch** |
| **Title:** VP of Operations | **Title: pianist, composer** |
| **Signature:** _____ | **Signature:** _____ |

**ANNEX I**
**74TH Miss Universe Selection Committee/Performer Schedule**

> Arrival Bangkok: **Nov 16**
> **Nov 17:** Rehearsals -MGI to confirm.
> **Nov 18:** Rehearsals -MGI to confirm.
> **Nov 19:** 11 A.M. Media Interview.
>         7 P.M. Preliminary Competition.
> **Nov 20:** Rehearsals- MGI to confirm.
>         7 P.M. Dinner with MUO President.
> **Nov 21:** 8 A.M. Live Show.
>         8 P.M. Coronation Party at Impact Challenger Hall. (Bangkok/Muang Thong Th).
> **Nov 22:** Depart Bangkok

**DISCLAIMER:** The Parties acknowledge that the production schedule, including rehearsals and show dates, is tentative and subject to reasonable change. The final  call times and activities will be confirmed in writing closer to the event.