

April 8, 2026

**VIA ECF**
Hon. Analisa Torres
United States District Court
Southern District of New York

Re:    *JKN Universe, LLC v. Omar Harfouch,* Case No: 1:26-cv-00316-AT

Dear Judge Torres,

This firm represents Defendant Omar Harfouch in the above-referenced action brought by Plaintiff JKN Universe, LLC, d/b/a the Miss Universe Organization ("MUO"). We write pursuant to Rule III(b)(iii) of Your Honor's Individual Rules and plan to move to dismiss MUO's Complaint and seek attorney's fees.[1] This letter follows an initial pre-motion letter, dated March 23,2026, pursuant to Rule III(b)(ii), and Plaintiff's March 30, 2026 response (the "Initial Response").

Mr. Harfouch is a distinguished composer Honoris Causa of the Béziers Méditerranée Conservatory, recognized for his cultural and humanitarian contributions, including through his "Concert for Peace" world tour, and his lobbying and whistleblowing efforts against the exploitation of models. Following his performance at the Vatican, he was designated as a Pilgrim Ambassador of Peace by Pope Francis. Those recognitions caused MUO to seek him out as a judge and musical performer for the 2025 Miss Universe pageant, hoping to attract other celebrity judges who might give the pageant a veneer of legitimacy. But the pageant was corrupt to its core, with finalists and winners selected in secret by MUO's criminal owners, who defrauded pageant contestants, judges, and viewers who paid to vote for contestants, and further used the pageant as cover to facilitate their other criminal activity.[2] When Mr. Harfouch exposed MUO's fraud and later demanded compensation for damages he suffered, MUO raced to the wrong court to file frivolous claims of breach of contract and defamation in a transparent attempt to silence him.

### A.    MUO Brought this Action in the Wrong Court

MUO tactically filed its Complaint in federal court despite the clear terms of the parties' agreement, requiring any action be brought in the courts of the "State of New York." Had MUO done so, it would have triggered New York's strict anti-SLAPP laws, requiring an automatic stay of discovery and proof of actual malice with "clear and convincing evidence" to avoid dismissal.[3]

---

[1] *See, e.g.*, *Bobulinski v. Tarlov* 758 F. Supp. 3d 166, 186 (S.D.N.Y. 2024) (dismissing and awarding Defendant's attorney's fees under New York's anti-SLAPP laws). Nothing in this letter is intended to waive any rights or additional relief, including punitive damages that may be awarded under New York's anti-SLAPP laws, especially because MUO proudly advertises how it files many defamation suits to silence accusers. (Exh. A.)

[2] In December 2025, Raul Rocha Cantu, who is still president of MUO, was charged in Mexico with drug and weapons smuggling, and fuel theft, among other crimes. He has vacillated between informing on his criminal co-conspirators as a cooperator and fleeing justice as a fugitive. Co-owner, Jakkaphong Jakrajutatip, was found guilty in Thailand for fraudulently raising funds for MUO. She remains a fugitive since failing to appear to be sentenced to years in prison.

[3] *See* Civil Rights Law § 76-a ("clear and convincing evidence")*, see also S.N. v. Integral Yoga Institute, Inc.*, 245 A.D.3d 536, 538 (1st Dep't 2026) ("the motion 'shall be granted' unless the nonmoving party shows 'that the cause of action has a substantial basis in law'" and finding no "basis for discovery under the heightened burden to lift a

**Mintz & Gold LLP**
600 Third Avenue, 25th Floor, New York, NY 10016

O 212.696.4848 | F 212.696.1231
mintzandgold.com

Hon. Analisa Torres
April 8, 2026

MUO sought to circumvent those laws by mischaracterizing the agreement's forum selection clause, misleadingly alleging: (i) "[t]his Court has personal jurisdiction because Harfouch consented … in Section 11 of an October 18, 2025 Performance Agreement" (Compl. ¶ 7); (ii) venue in federal court is proper because "the parties have agreed that New York is the 'exclusive jurisdiction'" (*id.* ¶ 8.); and (iii) "there is no other jurisdiction in which an action may otherwise be brought." (*Id.*)  But Section 11 of the agreement provides in full: "[t]his Agreement shall be governed by the laws *of the State of New York*, United States of America, and the parties submit to the exclusive jurisdiction *of its courts.*" (Compl. Exh. 1.) "Under the *'widely-accepted rule'* noted by the United States Court of Appeals for the Second Circuit, forum selection clauses using the term 'in a state' reference both the state and federal courts of the named state. However, clauses that use the term *'of a state' limit jurisdiction to only the state courts.*" *Meet Recruitment Inc. v. Neuro42, Inc.*, 786 F. Supp. 3d 856, 859–60 (S.D.N.Y. 2025) (emphasis added) (dismissing for forum non conveniens and citing *Rabinowitz v. Kelman,* 75 F.4th 73, 84 (2d Cir. 2023); *see also New Jersey v Merrill Lynch & Co., Inc.*, 640 F.3d 545, 549 (3d Cir. 2011) (citing similar 4th and 5th Circuit authority).

Plaintiff's Initial Response contained only frivolous arguments. *First*, Plaintiff attempts to read the words "State of New York, United States of America" as "State of New York" *and independently* "the United States of America" and cites in support a single 1961 case upholding the general principle that a contract provision should not be interpreted in a way that renders language surplusage. Here, the words "United States of America" keep their meaning and simply specify where New York is located. Plaintiff is urging a novel interpretation contrary to every other court that has considered similar forum selection clauses where the phrase "USA" immediately follows a reference to the court of a particular state. In those cases, the courts uniformly mandated proceeding in state court.[4]

*Second*, MUO argues that *Rabinowitz* and the other contrary precedents are inapposite because Section 11 does not contain the specific phrase "courts of New York." MUO relies on a single case, inapposite for many reasons, involving a party trying to avoid the appointment of an arbitrator to be chosen by a "judge of a New York court."[5] But that court distinguished that language from the many cases where parties agreed to *courts* "of a state." Here, the parties agreed to the law of the "State of New York" and to the jurisdiction "of its courts." The singular "its" in this clause can only be a reference to the "State of New York."

*Third*, MUO argues that even if Mr. Harfouch is correct about the clause, the Court could decline to enforce the clause if it is "unfair, unjust or unreasonable." It is MUO, with its principal place of business in New York, that is trying to unjustly forum shop away from the state courthouse next door to avoid anti-SLAPP laws.

---

discovery stay in a SLAPP action."); *Black v. Ganieva,* 236 A.D.3d 427, 428 (1st Dep't 2025) (reversing failure to dismiss because "opposition failed to show that the claim has a 'substantial basis.' which is the same 'substantial evidence' standard that 'has been equated with the ordinary summary judgment standard,' and it requires the submission of evidence such as an affidavit rather than reliance on the mere allegations in the complaint.").

[4] *See Rabinowitz* 75 F.4th at 84 (citing *FindWhere Holdings,* 626 F.3d at 754 (4th Cir. 2010) ("Virginia, USA."); *Dixon v. TSE Intern Inc.*, 396 F.3d 306 (5th Cir. 2003) ("the State of Texas, U.S.A.")); *Meet Recruitment* 786 F. Supp. 3d at 859 (citing *Dixon*); *see also Merrill Lynch & Co., Inc.*, 640 F3d 545, 549 (citing *Findwhere Holdings; Dixon*); *Kiwijet, LLC v. Mena Technics Co. W.L.L.*, 2:21-CV-8630-SK, 2022 WL 20401312, at *4 (C.D. Cal. Dec. 16, 2022) ("courts of New York, USA").

[5] *Certain Underwriters at Lloyd's London v. Edouch Elsa Ind. School Dist.*, 729 F. Supp.3d 378, 392 (S.D.N.Y. 2024).

### B.      MUO Fails to Allege Breach of Contract

Beyond the fact that MUO sued in the wrong forum, its claims lack merit. ***First***, when confronted with MUO's own statements that it fired Mr. Harfouch, and MUO's public statements that none of several judges who said they resigned actually resigned (*see* Exhs. B, C, D), MUO did not agree to amend its allegations. Instead, MUO changed the subject by arguing the key issue is that he "did not ***perform*** at the Event, which is not affected by whether Mr. Harfouch resigned or was fired as a judge." But MUO prevented Mr. Harfouch from performing or judging, and countless cases hold a party cannot recover for non-performance when that party prevented performance. *See, e.g.*, *Patterson v. Meyerhofer*, 204 N.Y. 96, 101 (1912).[6]

***Second***, MUO implausibly alleges that it incurred damages, including costs to find and compensate a substitute performer. (Compl. ¶¶ 60, 67.) When confronted with evidence those allegations are an outright lie, MUO again refused to amend and again changed the subject to a conclusory allegation that MUO incurred vague costs to rehabilitate MUO's tarnished reputation, which continues to be damaged by scandals, corruption, criminal acts, public articles, documentaries, and statements by its own owners, licensees, staff, judges, and contestants.

***Third***, MUO cannot plausibly allege it performed and can enforce the contract, which expressly promised a reputational benefit from MUO.  In its Initial Response, MUO flatly denied that any reputational benefit was promised, but Article V of the Agreement, governing compensation, expressly states that in lieu of monetary compensation "[t]he Parties acknowledge the engagement serves a mutual purpose of public recognition and exposure through the Miss Universe Platform." (ECF 1-1 at 4.) Despite his best efforts and his desire to promote his message of peace, Mr. Harfouch could not possibly derive a reputational benefit from a pageant that has been plagued with scandals and corruption.

### C.      MUO Fails to Allege a Defamation Claim

***First***, MUO fails to allege actual malice with non-conclusory allegations.[7] Instead, the Complaint affirmatively alleges and evidence shows MUO believed there was an "error" or an "unfortunate misunderstanding" or "confusion" that caused Mr. Harfouch to believe the pageant was corrupt. (Compl. ¶¶ 37-38; Exh. B, D, and E.) Assuming the truth of those allegations, confusion precludes a constitutionally required showing of actual malice.[8] MUO argues that Mr. Harfouch's statements are actionable to the extent they were made "after MUO informed Harfouch of his error." But Harfouch was not required to simply accept MUO's implausible denials, and

---

[6] The Initial Response also argued Mr. Harfouch "breached his obligations to follow judging determinations by MUO and agree to MUO's authority to determine the judging results." Because Mr. Harfouch was fired *before* judging was supposed to take place, MUO effectively ***admits*** that his statements were substantially true – *i.e.*, that MUO had already made "judging determinations" and reached "results," not the judges or the public that was paying to vote. That is consistent with evidence, including Mr. Rocha's public admission that a "discipline committee" advanced contestants based on alternate criteria. (Exh. C; *see also* Exh. D). There is no question that MUO secretly selected contestants - a Hulu documentary shows MUO's co-owners discussing how they falsely gave hope to contestants as a marketing ploy, how they controlled the outcome, and how certain contestants "can compete but they cannot win."

[7] *See, e.g.*, *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015); *BYD Co. Ltd. v. Vice Media LLC*, 531 F. Supp 3d 810,822-24 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022).

[8] *See, e.g.*, *Zaidi v. United Bank Ltd.*, 747 N.Y.S.3d 268 (Sup. Ct. 2002) (requiring "more than negligence, haste or a mistake") (citing *New York Times, Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).

mere denials cannot, as a matter of law, suffice to plead actual malice or establish falsity.[9]

*Second*, MUO fails to allege special damages.[10] MUO argues that special damages are not required for "defamation per se." But that phrase is not found anywhere in the Complaint and a claim for defamation per se has additional requirements not met. *See, e.g.*, *Henry*, 629 F Supp 3d at 146, n. 4 (noting that defamation per se requires the statements be defamatory on their face).

*Third,* MUO alleges defamation based on statements that are not false statements of fact, either because they are admittedly true or because they are not statements at all, including a photograph that does not contain any statement. MUO does not plead defamation by implication.[11] MUO did not respond about statements we identified. Instead, MUO's Initial Response again changed the subject by pointing to a single "example" of an allegedly false statement. ("The results for the Continental Miss titles and trophies were decided weeks in advance.") The Complaint acknowledges Mr. Harfouch was given items before the competition that "contained information about the winners and is very confidential." (Compl. ¶ 52.) Rather than deny the truth of what Mr. Harfouch was told, the Complaint argues "Harfouch omitted the indication that the trophies at issue were not for the winner or runners-up of the Competition." (*Id*.) That allegation does not disprove any statement made by Mr. Harfouch, and is irrelevant given MUO's public admissions that it did secretly select candidates.

*Fourth*, "[u]nder the libel-proof plaintiff doctrine, if there is little or no harm to a plaintiff's already low reputation, then the statements are not actionable." *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 352 (S.D.N.Y. 1998). MUO's reputation has been destroyed by countless ongoing scandals, including scandals specific to MUO's judging, including allegations and admissions about judging made by MUO's own owners. (Exh. F.) MUO's only argument is that it can be difficult to show a plaintiff is libel-proof. But MUO has not disputed any of the many scandals, including globally reported judging fraud, that satisfy the standard here.

*Fifth*, any supposedly defamatory statements made by Mr. Harfouch were privileged. MUO's Initial Response cited a 1983 case that limited the absolute litigation privilege before litigation commenced. But courts recognize a pre-litigation privilege, which New York's Court of Appeals has explained "may be 'lost' only 'where a defendant proves that the statements were not pertinent to a good faith anticipated litigation.'" *Gottwald v. Sebert*, 40 NY3d 240, 254 (2023). MUO cannot deny that Mr. Harfouch correctly anticipated litigation. Moreover, 2020 amendments to Civil Rights Law 76-a independently protect Harfouch's statements. *See id.* at 256-257. The Complaint should be dismissed with attorney's fees.

Respectfully submitted,

*/s/Peter Guirguis*
Peter Guirguis

---

[9] *See Brimelow v. New York Times Co.*, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021) ("well settled that denials without more do not support a plausible claim of actual malice."); *Henry v Fox News Network LLC*, 629 F Supp 3d 136, 146 (S.D.N.Y. 2022) ("Conclusory allegations that the statements were 'false' are insufficient to survive a motion to dismiss").

[10] Fed. R. Civ. P. 9(g); *Bobulinski, supra* ("Special damages require a specific accounting beyond a rough estimate.").

[11] *See, e.g., InkMango v. Warren*, 243 A.D.3d 476, 477 (1st Dep't 2025) (refusing to construe a claim for defamation as an unpleaded claim for defamation by implication); *Stepanov v. Dow Jones & Co*., 120 A.D.3d 28, 37 (1st Dep't 2014) (enunciating the "rigorous showing" required for defamation by implication).